IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOE BURR,**

        **Petitioner,**

**vs.**                                              **No. CIV 98-0329 BB/JHG**

**CAMILO ROMERO, Warden,**

        **Respondent.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

### PROPOSED FINDINGS

1. This habeas corpus action, brought pursuant to **28 U.S.C. §2254,** is before the Court on the merits. Petitioner (Burr) challenges his conviction in the case styled ***State of New Mexico v. Joe Burr***, and numbered 95-00137, Tenth Judicial District, County of Quay, State of New Mexico.

2. Burr presents the following issues for review:

I. **Whether in violation of due process, the State presented insufficient evidence to prove beyond a reasonable doubt that Petitioner committed burglary of a vehicle, conspiracy, possession of burglary tools, and larceny over $250.**

II. **Whether Petitioner's rights to effective assistance of counsel were violated when defense counsel failed to investigate adequately and discover that the state's main witness was prejudiced against the Defendant and that the main witness was an alcoholic who was suffering from the long term effects of a life time of alcoholism. Counsel also failed to raise a claim on Defendant's behalf that the State had violated his right to a speedy trial. Defense counsel also failed to file a motion to withdraw despite Defendant's continuous efforts to have defense counsel removed as his lawyer. Defendant requested a new lawyer based on Defense counsel's lack of experience as a criminal defense lawyer.**

On August 21, 1998, the Court dismissed Issues III (Double Jeopardy) and IV(Charges of Conspiracy Irregularities) based on procedural default.

3. Burr was found guilty of burglary of a vehicle, conspiracy, possession of burglary tools, larceny under $250 and found to be an habitual offender. On July 11, 1996, Burr was sentenced to an 18 month basic sentence and one year habitual enhancement on each of the three felonies, plus 364 days, to run consecutively with all suspended except the one year habitual terms for a total term of incarceration of three years to be followed by one year parole, to be followed by three years probation.

4. Trial counsel filed a late notice of appeal raising only the issue of insufficient evidence. Appellate counsel filed a motion to amend the docketing statement seeking to add the issue of ineffective assistance of counsel. The motion to amend was denied. The court of appeals affirmed. Appellate counsel timely filed a petition for a writ of certiorari with the Supreme Court of New Mexico. The petition for a writ of certiorari was denied on May 29, 1997.

5. On February 23, 1998, Burr filed a state petition for a writ of habeas corpus, raising

the four issues raised herein. The trial court summarily dismissed the petition on the same day. Burr did not seek appellate review of the denial by filing a petition for a writ of certiorari with the Supreme Court of New Mexico.

**I.    Whether in violation of due process, the State presented insufficient evidence to prove beyond a reasonable doubt that Petitioner committed burglary of a vehicle, conspiracy, possession of burglary tools, and larceny over $250.**

6.  Burr contends that the evidence was insufficient to convict him of the crimes charged, i.e., burglary of a vehicle, conspiracy, possession of burglary tools, and larceny over $250.  The determinative question in a sufficiency of the evidence claim on federal habeas corpus review, is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir.), *cert. denied*, 502 U.S. 835 (1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Sufficiency of the evidence for constitutional purposes is ultimately a question of law.  *Id.*  However, underlying factual determinations are presumed correct pursuant to 28 U.S.C. § 2254(d); *Case v. Mondragon*, 887 F.2d 1388, 1392-93 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990).

7.  Accordingly, this Court may not weight conflicting evidence nor assess witness credibility.  *Grubbs, v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).  Instead, it must view the evidence in the light most favorable to the prosecution and accept the fact-finder's resolution so long as it is within the bounds of reason.  *Id.* at 1487.

8.  A review of the state record in this case verifies the requirements of *Jackson* have been satisfied with respect to every element of each offense charged.  In fact, the evidence clearly supports the convictions.

The State presented nine witnesses which testified against Burr. Melvin Jobe testified he was at his home about 9:30 p.m. and observed a vehicle drive towards his home on what is a dead end road. Trial Tape 4 at 0.14. He testified this concerned him because it was unusual for a vehicle to be on that road at that time of night and because it ended about three to four-tenths of a mile from his mother's place. *Id.* at 0.39-0.49. Mr. Jobe testified he went back inside and called his mother to ask her if she was expecting company. *Id.* at 1.06. When he came back outside he observed the vehicle turn around and set its headlights on some county equipment, later identified as a road roller, which was approximately 300 or 400 yards from his house. *Id.* at 1.20-1.22. At that point, Mr. Jobe testified he became suspicious and called Harry Heckendorn, an employee of the county road department. *Id.* at 1.80-2.03. Mr. Heckendorn asked Mr. Jobe to watch the individuals while he called the sheriff. *Id.* at 2.28. Mr. Jobe testified he stood in his front porch and was able to observe two individuals walking around the road roller because they had their vehicle's headlights aimed at it. *Id.* at 2.39. Mr. Jobe testified that one of the individuals kept going back and forth between the road roller and the vehicle while the other appeared to stay around the road roller. *Id.* at 2.47-2.50. Mr. Jobe testified he watched until the individuals drove off. *Id.* at 3.23. Mr. Jobe then called his neighbor who lived approximately three miles north from where everything was happening and asked him to go outside as the vehicle passed in order to identify it. *Id.* at 3.34-3.49. Mr. Jobe testified he thought it was a car but couldn't identify what kind. *Id.* He then called Mr. Heckendorn to tell him the car had gone. *Id.*

Mr. Heckendorn testified that, after Mr. Jobe called him, he called the sheriff's office to report that somebody was "messing around with county equipment." Trial Tape 4 at 6.43. After he called the sheriff's office, Mr. Heckendorn picked up Daniel Rael (operator of the road roller)

4

and went to the site to see what was going on. *Id.* at 7.28-7.32. Mr. Heckendorn testified that when he arrived Deputy Joe Schallert was already there. *Id.* at 7.32-7.46. The deputy directed Mr. Heckendorn and Mr. Rael to inspect the road roller to see what was missing. *Id.* at 7.46. He testified a grease gun, a radio, and the batteries had been taken out. *Id.* at 7.54. Mr. Heckendorn further testified that the batteries were specifically for use on heavy road equipment and would have to be modified for use in other vehicles because they were much larger than a car battery. *Id.* at 8.10-8.18. At trial, Mr. Heckendorn identified the batteries found in the trunk of the car in which Burr was a passenger as the batteries taken from the road roller. *Id.* at 9.46-10.01. Mr. Heckendorn testified he was sure they were the same batteries because they were new, he had paid seventy dollars for each of them, and he had just put them in the road roller. *Id.* at 10.15-11.05.

Mr. Santiago Otero, who operated the road roller, testified he left the road roller in working condition when he left work at about 4:30 p.m on October 18, 1995. Trial Tape 4 at 14.36-14.52. He testified that the next day when he reported to work he found the batteries were missing along with a grease gun and his radio. *Id.* at 14.49-14.55. He identified his radio, his head phones, a flash light and the grease gun at trial and placed a value of fifteen dollars for the radio and thirteen dollars for the grease gun. *Id.* at 16.00-18.00. He testified he left these articles in the road roller when he left for home on October 18, 1995. *Id.*

Mr. Daniel Rael, a foreman for the county road department, testified Mr. Heckendorn called him to report to the site where the road roller was located. Trial Tape 4 at 21.00-22.00. Mr. Rael testified that when he arrived a sheriff's deputy and a police officer were already there with the individuals involved in the incident, including Burr who was already in the back of a

5

police unit. *Id.* at 22.06. Mr. Rael testified he identified the batteries as those belonging to the road roller because he was the individual responsible for county equipment and was there when they were purchased. *Id.* 22.30. Finally, Mr. Rael testified he had not given Burr or any other individual permission to take the batteries. *Id.* at 22.42.

    Michael O'Dell testified that he was with Burr and Ray Dunlap on the night of October 18, 1995. Trial Tape 4 at 25.37. Mr. O'Dell testified that on that night, he was with Burr and Ray riding around in Debra Rios' car. *Id.* at 26.29. He testified he was in the back seat, Ray was driving and Burr was in the front seat. *Id.* 26.37. He testified they had gone to buy some beer and cigarettes, dropped the cigarettes off at Rios' home then went driving around. *Id.* at 26.00-227.00. On direct examination, Mr. O'Dell identified an unopened beer can as one which came out of the twelve pack the three men bought the night of October 18,1995. *Id*. at 27.25. Mr. O'Dell testified they ended up driving down a dead end road, and when they turned around to leave they passed a road roller. Id. at 28.00-30.06. Mr. O'Dell testified that as they passed the road roller Burr asked Ray if he needed a couple of batteries for the car he had at home. *Id.* at 30.17. According to Mr. O'Dell's testimony, Burr then jumped out of the car, went over to the road roller, jumped on the cab and was trying to open the door. *Id.* at 30.27-30.53. Mr. O'Dell testified that after a short while Ray joined Burr. *Id.* 31.00-31.28. Mr. O'Dell testified that the two men then opened the trunk of the car, Burr took a tire tool out and both men then proceeded back to the road roller. *Id.* 31.50-32.30. Mr. O'Dell testified that shortly thereafter, Ray came back to the car with the first battery and Burr followed a short time later with the second battery, which were then placed in the trunk . *Id.* at 32.37-33.05. Mr. O'Dell also testified that while Burr was trying to open the doors, Ray got into the cab then came back to the car carrying a

grease gun, stereo headphones and a flashlight. *Id.* at 33.10-34.18. According to Mr. O'Dell's testimony, Ray handed him the grease gun and asked him to throw it down in the back of the car. *Id.* The two men then got into the car and they started to leave but were stopped about one mile down the road by a sheriff's deputy. *Id.* at 34.18-34.50. The deputy took their identification and they waited for about forty-five minutes before the deputy came back to the car, informed Burr there was a warrant for his arrest and asked him to step out of the car. *Id.* at 34.50-35.51. Burr then removed some items out of his pockets and threw them at Ray. *Id.* at 35.51-35.59. Mr. O'Dell testified that while they were waiting Ray told them to stick to the story that he had bought the batteries and had the receipts at home. *Id.* at 36.00-37.36. According to Mr. O'Dell's testimony, by this time there were several officers at the scene. *Id.* at 36.37. When the officers inspected the road roller, the deputy then came back, reported that two batteries were missing and arrested Ray since he was driving the car and the batteries were found in the car. *Id.* at 36.37-37.35. Mr. O'Dell testified the deputy transported him to the station where he gave a statement. *Id.* at 37.59. On direct exam, Mr. O'Dell also testified that Burr had a screw driver that night. *Id.* at 39.00-39.38. Finally, Mr. O'Dell testified he kept drinking while Burr and Ray were at the road roller and had thrown a beer can at the site. *Id.* at 40.00-40.20. At the trial, he identified the screw driver and the empty beer can. *Id.* at 40.45.

On cross-examination, Mr. O'Dell testified he saw Burr had a screw driver when he left the car and went to the road roller. Trial Tape 7 at 13.00-1312. He also admitted to being a recovering alcoholic and stated he had been sober since December of 1995. *Id.* at 13.14-13.26. Mr. O'Dell also testified he was just an observer, did not participate in the robbery and did not make any attempt to stop Burr or Ray because they were much bigger than him. *Id.* at 13.30.

7

Deputy Joe Schallert testified that on October 18, 1995, he was dispatched to the site in question and when he arrived he saw headlights approaching and saw a car go by. Trial Tape 7 at 25.48-26.50. Deputy Schallert testified he had been told that somebody was fooling around a county road roller and also was aware that he was on a dead end road, so he pulled the car over. *Id.* at 26.55. He testified he walked over to the car, identified the individuals in the car and told them why he had stopped them. *Id.* at 27.10-28.00. He also noticed empty beer cans on the floor of the car. *Id.* Deputy Joe Schallert asked Ray for consent to search the car and Ray consented. *Id.* 28.37. When Ray opened the trunk, the deputy found the two batteries with the tire iron on top of them. *Id.* at 28.40-28.49. Deputy Schallert testified Ray told him he had bought the batteries from a friend and had a receipt for them at home. *Id.* at 28.50-29.01. The deputy testified he had run an NCIC computer check on all three individuals and found there was a municipal bench warrant for Burr. *Id.* at 29.00-29.20. At that time, the city police units drove up. *Id.* The officers stayed with the three suspects while Deputy Schallert went to investigate the road roller. *Id*. at 30.15-30.19. The deputy testified he found an empty beer can close to the road roller that was the same brand of beer as the beer cans in Ray's car. *Id.* The deputy testified he found the two doors to the road roller unlatched, the cab door slightly open, and the batteries missing. *Id.* at 30.27-31.06. The deputy returned to the suspects' car and obtained verbal and written consent to search the car. *Id.* at 31.15-31.26. The deputy then collected the beer cans, the tire iron and the batteries and arrested Ray and Burr. *Id.* at 31.30-31.35. Mr. O'Dell gave the deputy a statement at that time. *Id.* at 32.28-32.31. At trial, the deputy identified the tire iron, the empty beer can found next to the road roller, the four full beer cans found in the suspects' car, and the screw driver, which the deputy said Burr had taken out of his back pocket and thrown at

8

Ray. *Id.* at 33.15-34.27. According to the deputy's testimony, Ray then hid the screw driver under his leg. *Id.* at 33.25-33.30.

Deputy Andy Andrews testified that he did a search of the suspect's car on October 19, 1995, at approximately 10:30 a.m. and found the grease gun on the floor board behind the driver's side of the car. Trial Tape 8 at .57-2.49.

Applying the *Jackson* standard to the evidence presented by the State, the Court finds Burr's sufficiency of the evidence argument is without merit. The evidence proved beyond a reasonable doubt that on the night of October 18, 1995, Burr conspired with Ray Dunlap to commit a burglary of the county road roller, contrary to N.M.Stat.Ann. § 30-28-2, and entered the county road roller without authorization with the intent to steal the batteries, contrary to N.M.Stat.Ann. § 30-16-3(B). The evidence also reflects that Burr had in his possession an instrument commonly used for the commission of burglary, contrary to N.M.Stat.Ann § 30-16-5. Finally, the evidence reflects Burr committed larceny under $250.00 when he stole the batteries, grease gun, radio, and flashlight from the county road roller, contrary to N.M.Stat.Ann. § 30-16-1.

**II.     Whether Petitioner's rights to effective assistance of counsel were violated when defense counsel failed to investigate adequately and discover that the state's main witness was prejudiced against the Defendant and that the main witness was an alcoholic who was suffering from the long term effects of a life time of alcoholism. Counsel also failed to raise a claim on Defendant's behalf**

**that the State had violated his right to a speedy trial. Defense counsel also failed to file a motion to withdraw despite Defendant's continuous efforts to have defense counsel removed as his lawyer. Defendant requested a new lawyer based on Defense counsel's lack of experience as a criminal defense lawyer.**

9. To prevail on an ineffective assistance of counsel claim, the petitioner must show both that his attorney's representation was so deficient that it was not objectively reasonable and that his counsel's deficiencies prejudiced his trial. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000). The court evaluates counsel's conduct from the perspective of counsel at the time, not with "the distorting effects of hindsight." *Castro v. Ward*, 138 F.3d 810, 829 (10th Cir. 1998). To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Moreover, Burr must overcome the presumption that counsel's conduct was constitutionally effective. *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

10. To support his claim that his counsel was ineffective, Petitioner lists the following instances which he contends demonstrates counsel's ineffectiveness:

(a) failure to investigate Michael O'Dell's background;

(b) failure to move for a change of venue;

(c) failure to challenge the stop and search of the vehicle;

(d) failure to file a motion in limine to exclude evidence regarding an outstanding bench warrant on the Petitioner;

(e) failure to submit jury instructions;

(f)  failure to question Mr. O'Dell about preliminary hearing testimony of Debra Rios;

(g)  failure to question Mr. O'Dell about his immediate release after giving a statement to the police;

(h)  asking "few questions which were irrelevant and nonsensical" when he cross-examined Michael O'Dell and failure to have a coherent defense theory;

(i)  mentioning in opening statement that Mr. O'Dell would appear very believable thus bolstering his credibility;

(j)  failure to object to hearsay testimony throughout the trial;

(k)  statements made in closing argument bolstered the credibility of Mr.O'Dell;

(l)  failure to request that the jury be polled;

(m)  failure to prepare for the sentencing hearing and then failing to move for a continuance;

(n)  failure to file a motion for reconsideration after the sentencing hearing;

(o)  failure of defense counsel to withdraw; and

(p)  failure of defense counsel to raise a claim on defendant's behalf in regard to his right to a speedy trial.

11.  Respondent claims Petitioner failed to raise claims (a) through (n) in his federal petition for writ of habeas corpus or in state court.  Respondent therefore contends these claims are new and unexhausted claims.  Accordingly, Respondent moves the Court to treat Petitioner's Memorandum Brief as an amended petition containing both exhausted and unexhausted claims and dismiss it without prejudice to allow Petitioner to return to state court to exhaust these claims.  Alternatively, Respondent moves the Court to disregard claims (a) through (n).

11

Respondent further contends claim (o) was "exhausted in a fashion in state court." However, Respondent argues that claim (p) was procedurally defaulted and should be dismissed because Petitioner never filed a petition for writ of certiorari in the state supreme court.

12. Generally, a federal court presented with a habeas petition containing both exhausted and unexhausted claims should dismiss the entire petition without prejudice. See *Rose v. Lundy,* 455 U.S. 509, 510 (1982). However, the Antiterrorism and Effective Death Penalty Act of 1996 authorizes the denial of a petition on the merits despite failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2); *Hoxsie v. Kerby,* 108 F.3d 1239, 1242-43 (10th Cir. 1997). "[I]t is appropriate to address the merits of a habeas petition notwithstanding the failure to exhaust available state remedies where, 'the interests of comity and federalism will be better served by addressing the merits forthwith.'" *Hoxsie*, 108 F.3d at 1242 (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987)). In this case, although Burr raised an ineffective assistance of counsel claim on direct appeal, he based it on different reasons than those expressed in his habeas petition and his Memorandum Brief. In his direct appeal, Burr claimed his counsel was ineffective because he was incompetent, did not represent his best interest, allowed his civil and constitutional rights to be violated, intentionally allowed prejudiced people to railroad him and conspired with others to convict him. The Court of Appeals of New Mexico held that the record did not establish a prima facie case of ineffective assistance of counsel and affirmed. Burr filed a petition for a writ of certiorari with the Supreme Court of New Mexico. The Supreme Court of New Mexico denied the petition for a writ of certiorari on May 29, 1997. Therefore, Burr has failed to exhaust his ineffective assistance of counsel claims. *See Smallwood v. Gibson*, 191 F.3d 1257, 1266-67 (10th Cir. 1999)(habeas petitioner failed to exhaust his ineffective assistance of counsel claims in

state court, where, although petitioner raised ineffective assistance of counsel claim on direct appeal, he based it on different reasons than those expressed in his habeas petition). However, dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds. *Id.* at 1267. In this case, Burr's unexhausted claims (a) through (n) are procedurally barred. Therefore, the Court will treat his claims as if they were exhausted.

    13. On federal habeas review, the substance of each federal claim must be presented to the state courts. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992). Exhaustion encompasses certiorari review by the state supreme court. *Watson v. New Mexico*, 45 F.3d 385, 387 (10th Cir. 1995); *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992). Burr did not present claim (p) in a petition for a writ of certiorari filed with the Supreme Court of New Mexico. Therefore, this claim was procedurally defaulted.

    14. The Court will not consider issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722 (1991). In his reply, Burr failed to respond to Respondent's argument that claim (p) was procedurally defaulted or that claims (a)-(n) were not exhausted.

    For a state procedural ground to be independent, it must rely on state law, rather than federal law. *Smallwood,* 191 F.3d at 1268. New Mexico law provides that the failure to raise issues in a direct criminal appeal results in waiver of those claims for purposes of state post-conviction relief. *Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998). A state ground will be considered adequate only if it is "'strictly or regularly followed' and applied 'evenhandedly to

all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir.)(quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982), *cert. denied*, 119 S.Ct. 345 (1998). In *Jackson*, the Court of Appeals for the Tenth Circuit concluded that New Mexico's rule was "adequate" for purposes of federal habeas procedural default doctrine because New Mexico cases indicated that New Mexico courts had consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief. *Jackson*, 143 F.3d at 1318.

However, the Court of Appeals held that the general rule of waiver of claims not raised on direct appeal would not apply where the underlying defaulted claim is ineffective assistance of counsel. In this case, Burr had no opportunity to develop facts relating to his counsel's performance and had the same counsel during his trial and direct appeal. "Absent the opportunity to consult with new counsel to ascertain whether counsel in his direct criminal proceedings performed adequately or develop facts relating to his counsel's performance, the state's imposition of a procedural bar 'deprives [petitioner] of any meaningful review of his ineffective assistance claim.'" *Id.* at 1319. Thus, under *Jackson*, the Court will consider Burr's ineffective assistance claims.

15. Burr claims his counsel failed to investigate Mr. O'Dell's background to uncover "bias and effects of alcoholism." However, on cross-examination Mr. O'Dell testified he was a recovering alcoholic and had been sober since December of 1995. He also admitted to drinking three beers on the night of October 18, 1995. Burr's allegation that Mr. O'Dell "was prejudiced against Mr. Burr based on Mr. Burr's race and his relationship with Ray Dunlap and Debra Rios," is not supported by any evidence. On direct examination, Mr. O'Dell thoroughly explained his relationship with all three individuals. Burr claims it was clear from Mr. O'Dell's testimony at

14

trial that he is an alcoholic and not a credible witness. However, the jury heard the evidence and had the opportunity to assess Mr. O'Dell's credibility.

Under the circumstances, the Court concludes that counsel's performance was not deficient. Moreover, even if counsel's performance was deficient in this regard, Burr has not shown prejudice. Given the evidence presented by other witnesses, there is no reasonable probability that the jury would have reached a different result had counsel discovered more evidence damaging to Mr. O'Dell's credibility.

Additionally, Burr's claims that his counsel was deficient for (1) failure to question Mr. O'Dell about his immediate release after giving a statement to the police; (2) mentioning in opening statement that Mr. O'Dell would appear very believable thus bolstering his credibility; (3) statements made in closing argument bolstered the credibility of Mr. O'Dell; and (4) asking "few questions which were irrelevant and nonsensical" when he cross-examined Mr. O'Dell and failure to have a coherent defense theory are without merit. Burr misconstrues the evidence. Counsel's statements are taken out of context. His opening statement to the jury was that, although Mr. O'Dell would appear believable, they should listen to all the inconsistencies of his story. Statements made in closing argument conveyed the same message. On direct exam, Mr. O'Dell testified that he was released after giving his statement. On cross-examination, Mr. O'Dell admitted the State paid for his trips to Tucumcari whenever he met with the prosecutor. Therefore, the jury had this evidence before it. Finally, besides his conclusory assertion that counsel asked "few questions which were irrelevant and nonsensical," Burr fails to show how counsel's questions prejudiced him. Finally, counsel's defense theory was reasonable under the circumstances.

15

16.  Burr claims that counsel was deficient for (1) failure to move for a change of venue; (2) failure to challenge the stop and search of the vehicle; (3) failure to file a motion in limine to exclude evidence regarding an outstanding bench warrant on Burr; (4) failure to submit jury instructions; (5) failure to object to hearsay testimony throughout the trial; and (6) failure to request that the jury be polled also are without merit.

Considering the overwhelming evidence against Burr, it was reasonable for counsel not to move for a change of venue.  Moreover, there is no reasonable probability that a change of venue would have changed the outcome.  In addition, counsel was not deficient for failing to challenge the stop and search of the vehicle.  Although Burr had standing to challenge his own arrest, *State v. Hernandez*, 122 N.M. 809, 813 (1996), he did not have standing to challenge the search of the car or the seizure of the evidence found in the vehicle.  *State v. Creech*, 111 N.M. 490, 492 (1991).

Moreover, reasonable suspicion existed to support the investigatory stop.  Reasonable suspicion to allow an officer to make an investigatory stop exists if the officer is "'aware of specific articulable facts, together with rational inferences from those facts,' and these facts and inferences . . . provide the basis for the suspicion." *State v. Galvan*, 90 N.M. 129, 131 (1977)(quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975)).  In this case, Deputy Schallert had reasonable suspicion to stop the vehicle.  Therefore, it was reasonable for counsel not to challenge the stop and search of the vehicle.

Under the circumstances, even if counsel was deficient by failing to file a motion in limine to exclude evidence regarding the outstanding bench warrant, Burr has not shown prejudice.  Although it may have been prejudicial to allow such testimony, given the evidence presented by

16

other witnesses, there is no reasonable probability that the jury would have reached a different result.

The Court also concludes that the jury instructions given by the state court adequately covered the law applicable to the case and finds Burr was not prejudiced by counsel's failure to submit his own. As far as Burr's contention that counsel was deficient in failing to object to hearsay testimony throughout the trial, he failed to indicate which hearsay testimony prejudiced him. Finally, Burr failed to demonstrate how he was prejudiced by counsel's failure to request that the jury be polled.

17. The Court has reviewed the record in regards to Burr's sentencing and finds that counsel was adequately prepared. Sentencing Tape 1 at 0.18-12.17. Petitioner's Memorandum Brief states that at the sentencing hearing counsel informed the court that "he did not know about the habitual charges until the sentencing hearing, and that he had been left in the dark." Petitioner's Mem. Brief at 14. However, a review of the record reflects that this statement was make by Burr and not by counsel. Sentencing Tape 1 at 12.49-13.28.

18. Burr's claim that "he requested that the trial court dismiss trial counsel several times and the trial refused to do so" is not supported by the evidence. The Court has reviewed the entire state court record and could not find any reference to this allegation. Therefore, the Court will not address this claim.

19. Finally, the Court finds that Burr was not prejudiced by counsel's failure to assert a speedy trial violation claim. "'A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant.'" *United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir.

1990)(citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  No single factor is dispositive.  *Castro v. Ward*, 138 F.3d 810, 819 (10th Cir. 1998).  However, "only if the period of delay is 'presumptively prejudicial' need we inquire into the other factors." *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994)(quoting *Tranakos*, 911 F.2d at 1427).  "The Supreme Court has stated that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Castro*, 138 F.3d at 819 (quoting *Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992)).  In this case, the crimes occurred on October 19, 1995, and trial commenced on May 28, 1996.  This delay is not presumptively prejudicial.  Accordingly, trial counsel was not ineffective in failing to assert a speedy trial violation claim.

      20.  In Petitioner's Memorandum Brief and Reply Brief, he moves the Court for an evidentiary hearing with respect to his claims in Issue II.  Burr argues that an evidentiary hearing is required in order to allow him to fully develop the factual basis for his claims of ineffective assistance of counsel.  The Court denied Burr's Motion for Evidentiary hearing on March 27, 2000.  The Court having found that Burr's ineffective assistance claims are without merit and do not establish a Sixth Amendment violation, he is not entitled to an evidentiary hearing.

## **RECOMMENDED DISPOSITION**

      Burr's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 should be denied.

_____
**JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE**